UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-60658-CIV-DAMIAN

CATHY PETERSON,

     Plaintiff,

v.

MSC CRUISES, S.A.,

     Defendant.

_____/

**ORDER ON DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT [ECF NO. 4]**

**THIS CAUSE** is before the Court on Defendant, MSC Cruises S.A.'s ("MSC"),

Motion to Dismiss Plaintiff's Complaint, filed June 24, 2024. [ECF No. 4 (the "Motion")].

THE COURT has considered the Motion, the parties' memoranda [ECF Nos. 8 and

9], the pertinent portions of the record, including the Complaint [ECF No. 1], and all relevant

authorities and is otherwise fully advised in the premises. For the reasons that follow, the

Court grants the Motion in part.

**I. BACKGROUND**

In this lawsuit, Plaintiff, Cathy Peterson, who was a fare-paying passenger aboard the

MSC cruise ship the M/S "Seascape" in January 2023, alleges that on January 31st at

approximately 11:30 a.m., she was traversing a walkway adjacent to a waterslide on Deck 19

of the ship when she slipped and fell due to a large puddle,[1] resulting in a fractured right ankle

---

[1] Ms. Peterson pleads that the substance in question was a "wet, slippery, transitory, and/or foreign substance present on the deck surface[,]" Compl ¶ 13, but in her briefing simply refers to this substance as "the puddle"—a convention this Court will adopt.

and related pain and suffering. *See* Compl. ¶¶ 13–14. Ms. Peterson filed a Complaint on April 22, 2024, setting forth four causes of action: (1) Negligent Maintenance; (2) Negligent Failure to Warn; (3) Negligent Maintenance (Vicarious Liability); and (4) Negligent Failure to Warn (Vicarious Liability).

In the Motion to Dismiss now before the Court, MSC asserts that all of the causes of action asserted in the Complaint should be dismissed because (1) Ms. Peterson has failed to plausibly plead MSC's actual or constructive notice, and (2) Ms. Peterson cannot circumvent the failure to plausibly plead notice by "entangling" vicarious liability claims with her direct-liability claims. *See generally* Mot.

In Response,[2] Ms. Peterson avers that she has pled two sufficient theories of notice: (1) that MSC had crewmembers stationed in the area who saw or should have seen the dangerous condition, and (2) that the puddle existed for enough time to invite remedial measures. She also contends that the puddle's size is large enough to establish constructive notice. *See* Resp. at 3–8. Ms. Peterson also argues that she has pled a core vicarious liability case under the Eleventh Circuit's standard set out in the *Yusko v. NCL (Bah.), Ltd.* and *Holland v. Carnival Corp.* cases because she identifies negligent crewmembers by their roles on the vessel. *Id.* at 8–11.

---

[2] Although the Response was filed untimely, and only after an Order to Show Cause issued by this Court, *see* ECF No. 5, the Court will consider it. *See Architectural Ingenieria Siglo XXI, LLC v. Dominican Republic*, 788 F.3d 1329, 1343 (11th Cir. 2015) ("Under Rule 60(b)(1), the district court has discretion to relieve a party from a final judgment for 'mistake, inadvertence, surprise, or excusable neglect.'" (quoting Fed. R. Civ. P. 60(b)(1))). The Court deems the tardiness—due to the apparent medical emergency of a paralegal, *see* ECF No. 7—an excusable mistake given counsel quickly took action to correct the inadvertent lack of filing a response. Additionally, MSC in its Reply does not ask the Court to disregard the late filing.

In Reply, MSC contends that Ms. Peterson has not sufficiently alleged any facts that show or even tend to show that there was a crewmember in the area when Plaintiff allegedly fell or that the puddle existed for any amount of time prior to the fall—which is fatal to any theory of actual or constructive notice. Reply at 2. MSC further avers that Ms. Peterson misinterprets the *Yusko v. NCL* decision and that it instead stands for the proposition that conclusory attempts to identify crewmembers improperly shift the burden to MSC.

Ms. Peterson also filed a Notice of Supplemental Authority on July 30, 2024, directing the Court's attention to Judge Altman's recent order in *Iacoli v. MSC Cruises, S.A.*, Case No. 24-cv-20082-ALTMAN/Sanchez, 2024 WL 3509584 (S.D. Fla. July 23, 2024) (Altman, J.). [ECF No. 10]. The Court has read and considered the *Iacoli* order in conjunction with the briefing.

## II.  LEGAL STANDARD

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A pleading withstands a motion to dismiss if it alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations as true.

*See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *SEC v. ESM Grp., Inc.*, 835 F.2d 270, 272 (11th Cir. 1988)).

Federal Rule of Civil Procedure 8(a)(2) also requires that a pleading contain a "short and plain statement of the claim" showing the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (cleaned up).

In cases involving alleged torts "committed aboard a ship sailing in navigable waters," the applicable substantive law is general maritime law, the rules of which are developed by the federal courts. *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320 (11th Cir. 1989) (citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959)); *see also Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1358 (11th Cir. 1990) ("Because this is a maritime tort, federal admiralty law should control. Even when the parties allege diversity of citizenship as the basis of the federal court's jurisdiction (as they did in this case), if the injury occurred on navigable waters, federal maritime law governs the substantive issues in the case."). In the absence of well-developed maritime law, courts may supplement the maritime law with general common law and state law principles. *See Smolnikar v. Royal Caribbean Cruises, Ltd.*, 787 F. Supp. 2d 1308, 1315 (S.D. Fla. 2011).

### III. DISCUSSION

In Count 1 of the Complaint, Ms. Peterson asserts a claim of negligent maintenance, based on a theory that MSC failed to maintain the ship in a safe condition sufficient to prevent Ms. Peterson's injuries. In Count 2, Ms. Peterson asserts a claim of negligent failure to warn, based on a theory that MSC owed Ms. Peterson a duty to warn of hazards it knew or should have known passengers may reasonably encounter on the vessel—a duty which it breached

4

by failing to warn of the condition of the floor surface. And in Counts 3 and 4, Ms. Peterson asserts MSC is liable under these same theories based on vicarious liability for the acts of its employees.

To bring a maritime negligence claim, "a plaintiff must allege that (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) (citation omitted). "This standard requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of a risk creating condition ...." *Holland v. Carnival Corp.*, 50 F. 4th 1088, 1094 (11th Cir. 2022) (internal quotation omitted). Therefore, "a shipowner's actual or constructive knowledge of the hazardous condition arises as part of the duty element in a claim seeking to hold the shipowner directly liable for its own negligence." *Id.* "Actual notice exists when the defendant knows of the risk creating condition" *Bujarski v. NCL*, 209 F. Supp. 3d 1248, 1250 (S.D. Fla. 2016) (Otazo-Reyes, M.J.). "Constructive notice arises when a dangerous condition has existed for such a period of time that the shipowner must have known the condition was present and thus would have been invited to correct it." *Id.* (internal quotation omitted). "Alternatively, a plaintiff can establish constructive notice with evidence of substantially similar incidents in which conditions substantially similar to the occurrence in question must have caused the prior accident." *Newbauer v. Carnival Corp.*, 26 F. 4th 931, 935 (11th Cir. 2022).

As noted above, MSC raises two general challenges to the sufficiency of Ms. Peterson's claims: (1) failure to plausibly plead notice, and (2) failure to sufficiently allege a basis for vicarious liability. Ms. Peterson agrees with MSC that maritime law requires a plaintiff to

allege notice in order to sustain a negligence claim whether based on a failure to maintain or a duty to warn. The parties also agree that this element may be proven either through the operator of the vessel's actual knowledge of the relevant dangerous condition, or through proof of constructive notice. *See* Resp. at 4-5 (citing *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019)). And the parties agree that constructive notice may be established, *inter alia*, by proof that a condition was present for a sufficient period of time or through evidence of substantially similar incidents. *Id.* Ms. Peterson does not argue that she has stated a claim through pleading MSC's actual knowledge of the puddle, nor does she present any allegations of substantially similar incidents. The issue, then, is whether Ms. Peterson has sufficiently alleged constructive notice. This Court will therefore consider Ms. Peterson's various theories of constructive notice, before then turning to the parties' arguments concerning her vicarious liability claims.

### A. *Constructive Notice*

#### 1. *Whether Ms. Peterson Has Adequately Pled That There Were Crewmembers Stationed in the Area So As To Establish Constructive Notice.*

Relying on *Davis v. Carnival Corp.*, Ms. Peterson argues that she has alleged specific facts regarding the presence of crewmembers that push her claims across the line from conceivable to plausible and therefore establish constructive notice. *See* Resp. at 5-6 (citing *Davis v. Carnival Corp.*, 22-CV-24109, 2023 WL 5955700, at *5 (S.D. Fla. July 31, 2023) (Reid, Mag. J.)). In *Davis*, the plaintiff alleged "that she observed approximately three crewmembers in the area where she fell, that these crewmembers saw the condition before the incident, and that one of those crewmembers cleaned the spill after she fell as depicted in the photograph." *Id.* The court held that these allegations were sufficient to "place the crewmembers in the immediate vicinity of the transitory liquid substance." *Id.* In this case, on the other hand, Ms.

Peterson has instead (and by her own account) attached "a screenshot obtained online that displays an MSC crewmember in the vicinity"—a screenshot she admits "is not from the time of the incident[.]" Resp. at 5–6. A copy of the screenshot is below:



Compl. at 4.

Ms. Peterson's allegations are quite different from those in *Davis*, where the plaintiff alleged not one but three crewmembers present at the time of the incident, identified them with some particularity, and pled facts about actions taken by one of the crewmembers at the time of the incident. Importantly, the allegations in *Davis* were all specific to the timeframe of the plaintiff's alleged injury. This Court agrees with Defendant that, unlike the plaintiff in *Davis*, Ms. Peterson only shows that the person in the photograph[3] was in the location depicted "at some unknown time when the photograph was taken," which is itself insufficient under the standard articulated in *Holland v. Carnival Corporation*. *See* Mot. at 4 n.1; *Holland v. Carnival Corp.*, 50 F.4th 1088, 1096 (11th Cir. 2022) (finding allegations did not cross the line

---

[3] It is not even clear from the photograph that the person is necessarily a crewmember.

7

from possibility to plausibility of entitlement to relief under *Iqbal*, stating ". . . while Holland alleges that there were crewmembers in the surrounding shops, he does not allege that there were any crewmembers in the immediate area of the glass staircase that could have observed or warned him of the hazard").

Nor does the court's decision in *Iacoli* help Ms. Peterson here. While it is true that MSC made similar arguments in *Iacoli* as it did in this case, the plaintiff in *Iacoli* alleged a crewmember's presence specifically and precisely: "Iacoli alleges that an MSC employee was between '10-15 feet [away] of the exact location of IACOLI's fall *who witnessed the subject incident*, and *who was within plain viewing distance, close enough to have seen the subject water on the floor* since this crewmember was *looking right in the direction of the subject surface*." 2024 WL 3509584 at *4 (emphasis included). While the plaintiff in the *Iacoli* case therefore did "precisely what the *Holland* Plaintiff failed to do" by alleging that the employee could have observed or warned her of the hazard, *id.*, Ms. Peterson has not done so here. Instead, apart from the stock image taken from some unknown corner of the Internet, the Complaint in this case simply alleges in a conclusory fashion that "Defendant had a crewmember station in the area to identify and correct dangerous conditions." Compl. ¶ 18.[4]

This Court finds that Ms. Peterson has not sufficiently pled facts to establish constructive notice based on the vague allegation of the presence of a crewmember "in the area."

---

[4] Ms. Peterson mentions other crewmembers in paragraphs 31 and 37 of the Complaint. As discussed below, *see infra* Section III.C, however, she pleads the existence of these other crewmembers in far too conclusory a fashion to establish any claim that they observed or warned her of the hazard.

### 2. Whether Ms. Peterson Has Adequately Pled That The Puddle Existed For A Sufficient Amount Of Time To Establish Constructive Notice.

Ms. Peterson argues that the Complaint includes sufficient allegations that the puddle existed for an adequate amount of time to establish MSC's constructive notice. *See* Resp. at 5. Notably, she does not allege any of the facts typically present when courts find constructive notice under such circumstances. *See Palavicini v. Wal-Mart Stores E., LP*, 787 F. App'x 1007, 1012 (11th Cir. 2019) (listing "evidence of footprints, prior track marks, changes in consistency, [or] drying of the liquid[]" as elements used to prove a puddle existed for a sufficient length of time); *Norman v. DCI Biologicals Dunedin, LLC*, 301 So. 3d 425, 429 (Fla. 2d DCA 2020)[5] (discussing whether the "offending liquid" was "dirty" or "scuffed."). Nevertheless, Ms. Peterson argues in her Response that she can establish constructive notice based on the size and position of the puddle, which she argues is evidence that the dangerous condition existed for a sufficient period of time to invite remedial measures.[6] She cites two cases in support of this argument: *Cosmo v. Carnival Corp.*, 272 F. Supp. 3d 1336, 1342 (S.D. Fla. 2017) (Scola, J.), and *Hernandez v. Walmart Stores, Inc.*, 21-CV-20861, 2022 WL 1642814, at *6 (S.D. Fla. Apr. 28, 2022) (Damian, Mag. J.), *report and recommendation adopted*, 21-CIV-20861, 2022 WL 2974836 (S.D. Fla. July 27, 2022) (Cooke, J.). As an initial note, both of the

---

[5] State law is persuasive here to the extent that it does not conflict with federal maritime law. *See Just v. Chambers*, 312 U.S. 383, 388 (1941) ("With respect to maritime torts we have held that the State may modify or supplement the maritime law by creating liability which a court of admiralty will recognize and enforce when the state action is not hostile to the characteristic features of the maritime law or inconsistent with federal legislation."); *Becker v. Poling Transp. Corp.*, 356 F.3d 381, 388 (2d Cir. 2004) ("federal maritime law incorporates common law negligence principles generally, and [state] law in particular").

[6] *See Guevara*, 920 F.3d at 720 ("A maritime plaintiff can establish constructive notice with evidence that the defective condition existed for a sufficient period of time to invite corrective measures." (cleaned up)).

foregoing cases were before the courts on motions for summary judgment, so the issues presented were not the same as those here, where the Court is concerned with the sufficiency of the allegations in the Complaint.

In any event, in *Cosmo*, the court found that "a factfinder could conclude that the puddle's size is circumstantial evidence that the defect had existed for a sufficient period of time to put Carnival on notice of its existence[]" where a puddle near a pool on a cruise ship was "approximately five-feet long and two-feet across"—*i.e.*, approximately ten square feet. 272 F. Supp. 3d at 1342. Similarly, although *Hernandez* did not involve a cruise ship injury and did not apply maritime law, it did rely on the decision in *Erickson v. Carnival Cruise Lines, Inc.*, 649 So. 2d 942 (Fla. 3d DCA 1995), which is a cruise ship injury case applying maritime law. In *Erickson*, Florida's Third District Court of Appeal concluded that "the source of the puddle (*i.e.* ceiling leak) as well as the size of the puddle were sufficient to create a jury question as to whether this hazardous condition existed for a sufficient period of time to charge [the defendant] with constructive notice and to invite corrective measures[.]" *Id.* at 942–43. This Court agrees that a factfinder could conclude that a cruise operator was on constructive notice of a dangerous condition based on the size of a puddle. *See also Hostert v. Carnival Corp.*, 21-CV-23701, 2024 WL 68292, at *4 (S.D. Fla. Jan. 5, 2024) (Altman, J.) (explaining that a slip-and-fall plaintiff may prove constructive knowledge through circumstantial evidence).

Here, Ms. Peterson admits that "[t]he exact proportions and source [of the puddle in this case] are undetermined" at this stage, but points to the photograph included in the Complaint as evincing a puddle of significant size. Resp. at 7 (citing Compl. at 5—see below).

10



Compl. at 5.

And, as Ms. Peterson also identifies the "Racer Waterslides" in the Complaint as the likely source of the puddle, she argues that this allegation, in conjunction with the size of the puddle, serves to make out a plausible scenario of the puddle's formation—specifically, that MSC passengers may have exited the Racer Waterslides and then traversed the adjacent walkway dripping water. *See* Resp. at 7.

This Court is persuaded that Ms. Peterson has sufficiently pled a viable theory of constructive notice by including a photograph depicting an apparently large puddle (or perhaps series of interconnected puddles, as the picture appears to show) and pleading plausible allegations concerning the source of the puddle. In other words, the Court finds that Ms. Peterson has pled a scenario in which a puddle existed for sufficient length of time such that MSC *should have* known about it. *See Woodley v. Royal Caribbean Cruises, Ltd.*, 472 F. Supp.

3d 1194, 1204 (S.D. Fla. 2020) (Moore, C.J.) (explaining that constructive notice exists when the defendant "*should have known* of the dangerous condition" (emphasis in original)); *Hodson v. MSC Cruises, S.A.*, 2021 WL 3639752, at *7 (S.D. Fla. Aug. 2, 2021) (Goodman, Mag. J.), *report and recommendation adopted*, 2021 WL 3634809 (S.D. Fla. Aug. 16, 2021) (Moreno, J.) (finding that deposition testimony that a passenger "noticed that water that was being tracked in by the passengers in bathing suits had been pooling into puddles on the subject stairs, and those puddles 'looked like they had been there for quite awhile[]' was sufficient to create jury question on constructive notice." (cleaned up)). Notably, the Eleventh Circuit has found that a period as short as ten or eighteen minutes can be sufficient to put a cruise ship defendant on constructive notice of a dangerous condition. *See Lebron v. Royal Caribbean Cruises Ltd.*, 818 F. App'x 918, 922 (11th Cir. 2020) (ten minutes); *D'Antonio v. Royal Caribbean Cruise Line, Ltd.*, 785 F. App'x 794, 798 (11th Cir. 2019) (eighteen minutes). The allegations in the Complaint are more than the "barebones allegations" MSC argues they are and, rather, are sufficient to plausibly allege MSC's constructive notice of the hazard that allegedly led to Ms. Peterson's injury. *See* Mot. at 8. At this stage of the pleadings, that is enough to survive dismissal.

Accordingly, Ms. Peterson has sufficiently alleged facts to support claims of negligence based on constructive knowledge of the hazard, and the Motion is therefore due to be denied as to Counts 1 and 2.

### B. Whether Ms. Peterson Has Adequately Pled Vicarious Liability.

In Counts 3 and 4, Ms. Peterson alleges MSC is liable for her injuries based on vicarious liability. To maintain a claim for vicarious liability, a plaintiff must show that an employee committed a negligent act: "(1) within the scope of employment, or (2) during the course of employment and to further a purpose or interest of the employer." *Carey v. Kirk*, 21-

20408-CIV, 2022 WL 17996027, at *7 (S.D. Fla. Sept. 2, 2022) (Martinez, J.) (citing *Valeo v. East Cost Furniture Co.*, 95 So. 3d 921, 925 (Fla. 4th DCA 2012)).

MSC argues that Ms. Peterson's vicarious liability claims fail at the onset because they do not allege a specific crew member whose actions MSC could be vicariously liable for. Mot. at 11. Citing the Eleventh Circuit's discussion of vicarious liability in *Yusko v. NCL (Bahamas), Ltd.* and in *Holland*, MSC asserts that Ms. Peterson is therefore limited to a theory of direct liability. *See Holland*, 50 F.4th at 1097 ("Holland has not identified any specific Carnival employee's negligent action that caused his fall. And nothing in *Yusko* suggests that Holland can . . . [assert] claims for vicarious liability [by] asserting in a conclusory allegation that Carnival was vicariously liable for any negligent action by any of its crewmembers.").

As discussed above, Ms. Peterson "has not identified any *specific* [MSC] employee's negligent action that caused [her] fall." *Id.* (emphasis added). Although *Yusko* makes clear that a plaintiff may plead a negligence claim under either a theory of direct liability, vicarious liability, or both, it does not *guarantee* that both sets of theories are always available to a cruise ship plaintiff asserting claims of negligence. *See generally Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164 (11th Cir. 2021).

In her Response, Ms. Peterson points to paragraphs 31 and 37 of the Complaint as additional examples of the Complaint identifying MSC crewmembers. Resp. at 10. However, those paragraphs only generally describe "MSC's personnel assigned to maintain and/or clean the walkway adjacent to the Racer Waterslide exit on Deck 19[.]" Compl. ¶¶ 31, 37. These descriptions of a *hypothetical* class of crewmembers, without alleging facts showing Ms. Peterson knows (or has reason to know) that any *specific* crewmembers fulfilling such capacities exist (and were negligent with respect to the puddle on the morning of January 31,

13

2023), are insufficient. Absent specific allegations about such crewmembers or their negligence, both of Ms. Peterson's vicarious liability claims must fail. Accordingly, the Motion is due to be granted as to Counts 3 and 4.

## IV.    CONCLUSION

For the reasons set forth above, the Court finds that Cathy Peterson has alleged facts sufficient to support a theory of MSC's constructive notice of her alleged slip-and-fall. Therefore, as constructive notice is the only basis raised by MSC to challenge the negligence claims, the motion to dismiss the negligence claims fails. However, Ms. Peterson's vicarious liability claims, as currently pled, are not supported by allegations that sufficiently identify any crewmembers who might be negligent, or what their negligent conduct was.

Still, in the event Ms. Peterson is aware of additional relevant facts, it is possible that a more carefully drafted complaint might suffice to state a claim for vicarious liability. "Generally, where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Bryant v. Dupree,* 252 F.3d 1161, 1163 (11th Cir. 2001) (cleaned up).

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.    Defendant's Motion to Dismiss Plaintiff's Complaint **[ECF No. 4]** is **GRANTED IN PART** and **DENIED IN PART**.

2.    Counts 3 and 4 of the Complaint are **DISMISSED WITHOUT PREJUDICE**.

3.    In the event Ms. Peterson intends to file an Amended Complaint, she shall do so **within fourteen (14) days** of the date of this Order. If Plaintiff files an Amended Complaint, MSC shall file a response **within fourteen (14) days of the filing of the amended pleading**. If Ms. Peterson does not file an Amended

Complaint, RCL shall file an Answer as to the remaining claims not dismissed herein no later than **September 10, 2024**.

**DONE AND ORDERED** in Chambers in the Southern District of Florida, this 12th day of August, 2024.

_____
**MELISSA DAMIAN**
**UNITED STATES DISTRICT JUDGE**